## WARNER v. WINSLOW and others.

S. conveyed land to R. H. W. by an absolute deed, as security for a loan, subject to a mortgage to D. The conveyance was recorded as a deed. A few days thereafter, and after the loan was paid up, R. H. W. purchased the land from S., and on S. procuring a satisfaction piece from D. duly recorded, W. paid to S. the entire price of the land. D. had long before assigned the mortgage to J. R. W., but the latter had neglected to record the assignment. D. received no payment or consideration for the discharge. R. H. W. had no notice of this fact, or of the assignment to J. R. W.

*Held*, that the land in the hands of R. H. W. and of purchasers from him, was discharged from the mortgage.

The recording of the deed to R. H. W. was, in the first instance, a nullity. But after he purchased and paid for S.'s equity in the land, the record of the deed became fully operative. The transaction was equivalent to the delivery of a deed, which had been recorded in anticipation of the completion of a sale.

If the assignment had been recorded while the deed stood as security for S.'s loan, the land in R. H. W.'s hands would have been liable to the mortgage.

The record of a deed, recorded before delivery, or which is recorded as a deed when it is intended as a security, becomes valid upon a complete delivery, or a purchase of the equity of redemption; and is from thence operative against subsequent purchasers and incumbrancers.

To complete the character of a bona fide purchaser in equity without notice, it is not necessary that the whole or any part of the consideration be paid at the time of the delivery or recording of the conveyance, (as the case may be.) It suffices that it be paid before the purchaser has notice of the prior right.

It is the policy of our laws, to facilitate alienations of land. The recording acts pursue this policy, regulating alienations only so far as to afford security to purchasers and incumbrancers. Those acts should not be so construed and refined upon as to thwart or impede the great design of their enactment.

*Semb.* That if R. H. W.'s deed were inoperative, he has the superior equity, by his purchase and payment for the land, and entering into its possession, before the assignment was recorded, and without notice of its existence.

Also, that a re-delivery of the deed would be inferred on such purchase and payment, if it were necessary to support the vendee's title.

March 6; July 3, 1844.

THIS was a suit to foreclose a mortgage. The bill was filed on the 26th of January, 1841. It stated that W. W. Backus, on the 1st day of May, 1836, executed to John Darley his bond and mortgage for $500, payable in four years with semi-annual

interest at six per cent. The property mortgaged was on Hudson street in this city. The bond is lost. The mortgage was recorded, May 26, 1836. That on the 8th of June, 1837, Darley, in consideration of $500, assigned the bond and mortgage to the complainant. The assignment was recorded, March 25, 1840.

The bill then stated that Backus conveyed the premises to G. Morris; Morris to Henry Schenck; and Schenck and wife to the defendant, Richard H. Winslow ; each conveyance being made expressly subject to the mortgage. That after the latter conveyance, the defendant, Schenck, in fraud of the complainant, and knowing that he was assignee of the mortgage, obtained from Darley, without any consideration or payment, a satisfaction of the mortgage, and caused it to be recorded. That the mortgage has never been paid, that Winslow had notice of the assignment when the lands were conveyed to him, and that after the assignment was recorded, he conveyed to the defendant, Manning. The bill charged that the interests of Winslow and Manning, were subject to the complainant's rights as assignee of the mortgage.

The answer of Winslow, set forth that the premises were conveyed to him by Schenck and wife, by a deed dated January 6th, which was delivered about the 18th of January, 1840, and recorded on that day. The deed was expressed to be subject to a mortgage for $500, executed by Backus to Darley, which Winslow was to pay. That the conveyance to him was made in good faith, for a good and valid consideration, and without notice of any assignment of the mortgage to any person. That before Schenck's deed was delivered, Darley acknowledged satisfaction of the mortgage, and the discharge was delivered to him, and he paid a larger consideration in consequence thereof. He believed and had no reason to doubt, but that the mortgage had been satisfied, when he parted with the purchase money. That he is ignorant of any fraud in Schenck, and as to the mode in which the discharge was obtained; or whether the mortgage had been actually paid. That he had no notice of the assignment of the mortgage, until after the conveyance was delivered to him and the price paid.

The answer of Manning set forth the same facts in substance. That the discharge was delivered to Winslow before he accepted the deed or paid the price; and that he, Manning, as well as Winslow, is a bona fide purchaser in good faith, for a valuable consideration, without notice of the assignment to the complainant, or of any fraud in procuring the discharge.

Proofs were taken on both sides.

The satisfaction executed by Darley, was dated January 30th, acknowledged the next day, and recorded February 1st, 1840.

Darley was examined as a witness for the complainant, and testified that no consideration was paid to him on his executing the discharge.

On the part of the defendants, it was proved that the deed from Schenck to Winslow, was in the first instance a security for a loan of money. The deed was not delivered till several days after it was executed, and it was recorded subsequent to its delivery. The loan for which it stood as security was fully paid. Soon after this payment, and on the 30th of January, 1840, Winslow, still holding the deed, purchased the premises absolutely from Schenck, and the whole consideration was paid on Darley's discharge being produced. That the purchase was intended to be made free from the Darley mortgage. And that Darley, when called on for a discharge of another mortgage given by Backus on lands included in Winslow's purchase, informed Schenck's agent that this mortgage of $500 was paid; and thereupon the agent, who was ignorant of the facts in regard to it, brought a discharge of the latter to Darley, who executed it. The consideration of Manning's purchase was a precedent debt due to him from Winslow.

*A. S. Johnson,* for the complainant.

*A. L. Robertson,* for the defendants, Winslow and Manning.

THE ASSISTANT VICE-CHANCELLOR.—The deed from Henry Schenck to Winslow was delivered before it was recorded, as collateral security for a loan made by Winslow to R. B.

Schenck. No writing by way of defeasance was executed, or which explained that the deed was conditional, or designed to have the effect of a mortgage. Therefore when the deed was recorded as an absolute deed, the act of recording it was nugatory. Such was the law before the Revised Statutes. The provision incorporated in the recording act, (1 R. S. 766, § 3,) does not in terms reach the case, for the reason that there was no written defeasance.

At that stage of the transaction, the legal title of the premises in question was vested in Winslow, subject to the mortgage to Darley. But inasmuch as the deed was intended as a security, it might have been defeated by either a deed or a mortgage by H. Schenck to a purchaser in good faith without actual notice. And if the complainant's assignment had been recorded while the loan was outstanding, Darley's subsequent discharge of the mortgage would have been unavailing to the defendants.

The next stage of the case exhibits the loan to R. B. Schenck satisfied, and Winslow holding the legal title to the land as a naked trustee for H. Schenck. I am proceeding on the assumption, in which both parties concurred, that Schenck retained an equity of redemption, notwithstanding the absolute deed.

This was however, a mere equity, and he immediately sold it to Winslow, for a valuable consideration, which was paid in full. R. B. Schenck informed Winslow that Darley's mortgage was paid, and procured and brought to him a discharge from Darley. Winslow was not guilty of any carelessness or inequitable omission, in receiving this as evidence of the payment of the mortgage. His assumption of the payment of the mortgage by accepting the deed from Schenck, was at an end upon the determination of the beneficial interest which he took by the deed. It was a debt which then devolved upon Schenck. Upon Darley's satisfaction of the mortgage, Winslow proceeded to fulfil his contract of purchase, and paid the full price to Schenck, without any deduction for that mortgage, and without any notice of the rights of the complainant. He thereby united the whole benefical and equitable interest, with the legal estate which he already held by the deed; and as to strangers, at least, became clothed with the whole title.

It was urged by the complainant's counsel that upon the payment of the loan for which Winslow took the conveyance as security, the title was re-vested in Schenck and the deed became of no effect. But this was not its operation. At law the title passes only by deed; and after the loan was paid, Winslow, *at law*, could have ejected Schenck by force of the deed, and turned him out of possession. And the defeasance and actual payment of the debt would have been no defence. (*Webb* v. *Rice*, in the Court for Correction of Errors, December, 1843,(a) reversing the judgment of the Supreme Court in the same case, reported in 1 Hill's R. 606.)

The sale to Winslow being completed, and the complainant's assignment having been recorded soon after, it was argued in behalf of the latter with great ability and ingenuity, that the mortgage has precedence of the deed, because *the deed was not duly recorded*, when it was recorded on the 18th day of January, 1840, (at which time it was intended as a security,) and it never was subsequently recorded.

I have already stated that the act of recording the deed, in reference to the transaction of loan, was a nullity. The section of the statute before cited, declares that the person for whose benefit a deed designed as a security is made, shall not derive any advantage from the recording thereof. And here Winslow did not derive any advantage from it, assuming for the argument, that the case was literally within the statute. But that transaction was at an end. The record of the deed had as yet accomplished nothing. Nevertheless there the deed was, duly delivered, absolute, conveying the whole legal title, and recorded. It appears to me that the parties then stood in the same plight that they would have done, if there had been no loan in the case, but in its stead, the parties had been treating for a sale, and in expectation of the treaty ripening into a bargain, Schenck had executed and recorded a deed to Winslow. Then, upon the terms being agreed upon, the purchase money

(a) Now reported in 6 Hill's R. 219.

paid, and the deed delivered, the record of the deed would become fully operative, and the transaction perfect.

Although, to complete the character of a bona fide purchaser in equity, the party should pay the whole consideration before he has notice of the prior right, yet it is not necessary that the whole or any part of it should be paid at the time of delivering or recording the conveyance. It suffices if, as in this instance, the deed is recorded, then delivered, and then, after an interval, the consideration is paid ; provided the same be paid before the conscience of the purchaser is affected by notice.

Indeed, to insure entire safety from fraudulent incumbrances or conveyances, intervening after an examination of the title, and before completing a purchase or loan on real estate, it seems indispensable that the deed or mortgage should be recorded before the search is closed or the transaction consummated ; and in practice, this is a very usual occurrence.

I cannot imagine any good reason why the defendant, Winslow, should be in a worse situation by what transpired, than he would have been if he had received a deed without any consideration or any intention to own the land or retain it, and had caused it to be recorded ; and two weeks afterwards, had bought the land and paid for it. The effect upon subsequent purchasers is the same in the one case as in the other. So long as the transaction is not fraudulent, the junior purchaser or incumbrancer who searches the records, and finds a deed recorded there, is not injured, nor has he any right to complain, if in fact, the deed *when* recorded was no deed, but a mere security, provided it has become a deed by purchase and payment before his own right intervenes. If, while the loan continued, a person proposing to buy the land from Schenck had found the record of this deed, he undoubtedly would have stopped short, unless he had learned that it was designed as a security. And after Winslow purchased, such a person pursuing the same inquiry, if he had learned any thing beyond the record of the deed, would have learned also that the land had been bought and the consideration paid by Winslow. Without further inquiry beyond the records, a proposed purchaser would reasonably stop short, on discovering the deed to Winslow. The

pursuit of further inquiries, we are bound to believe, would have elicited the truth, and informed him fully of Winslow's equity while he held the land as security, and of his full rights after he purchased it.

I do not perceive therefore how any injury or injustice could result from holding the record of the deed made on the 18th day of January, to be a protection to Winslow's absolute purchase on the 30th of the same month. On the contrary, it is evident that great difficulties and hardships will arise, if a different doctrine be held.

How far one who purchases for a precedent debt, may be considered a purchaser for value, is by no means a settled point. As the case of the defendant Manning is stated in the evidence, I must hold upon the present aspect of our decisions, that he was not such a purchaser. It does not appear that he relinquished any subsisting securities, other or better than the personal liability of Winslow, and that would remain to him if he did not acquire title.

But it often happens that one who does not acquire the character of a bona fide purchaser for value, in fact loses his opportunity of collecting his debt, by accepting the property which he agrees to take in payment, although he had no security other than that of his principal debtor. Suppose that such was the fact here, and that Manning before buying, searched the title so far as is universally deemed necessary. He would have found a perfect title in Winslow on the record, unincumbered. He would have found the complainant's mortgage discharged. He would therefore take the title with all the assurances that our law of conveyances could afford to him, that it was good and unimpaired.

It would surely be hard and oppressive if he were to be deprived of it by parol evidence, (of which he could know nothing,) that the deed to Winslow when it was recorded, was not a deed but a mortgage; when the same evidence would prove that so far as it could be accomplished by the intention of the parties, it subsequently became an absolute deed.

I allude to these considerations, to show the evils which may ensue from adopting the complainant's position. The transfers

of real estáte are always frequent in our highly commercial community. Their frequency is not only an indication of activity in business, but it is an important promotive of that activity. A prompt and ready disposition of real estate by way of sale and of mortgage, supplies the means of enterprise and adventure, at the moment when such means are most available. It is therefore the true policy of our laws to facilitate alienations of land, and to regulate them only so far as may be necessary to insure security to purchasers and incumbrancers. Our recording acts pursue this policy, and the courts ought not by refinements in construing the statutes, to thwart or impede the great design of their enactment.

A liberal, and at the same time a safe construction, will give to the record of Winslow's deed, the effect for which the defendants contend.

The complainant further argued that Winslow must stand upon a parol conveyance made on the 30th of January, or upon the record of the deed made on the 18th, which deed was made subject to the mortgage to Darley.

I perceive no reason why he may not stand upon both, if it be necessary to protect his title. And as to the deed being subject to the mortgage, he shows the mortgage satisfied. It was discharged in good faith so far as he is concerned, and by the person who pursuant to the subsequent agreement was bound to pay it. The complainant was neither a party or privy to the deed ; and the parties to it could alter or discharge Winslow's assumption of the mortgage. Then, as to the idea of a parol conveyance. It suffices as to third persons, (and in this respect the complainant is a stranger,) that Winslow had the legal title by the deed, and all the equity by the purchase and payment. If any thing more were necessary, either as to strangers or Schenck himself, I should feel bound to infer a re-delivery of the deed. The record made on the 18th day of January would subserve the re-delivery as effectually, as it would an absolute delivery on the day it was made.

Assuming that the complainant is correct in his view of the nullity of the record of Winslow's deed in reference to his purchase of the estate, the latter has the superior equity

and as such it should prevail. In this view, and leaving the naked legal title out of the question, Winslow stands as a bona fide purchaser of the estate by a parol agreement, having gone into possession, and paid the whole consideration to the owner, for a title which upon the the record was discharged from Darley's mortgage. The complainant by neglecting to record his assignment, has enabled Schenck to sell the estate to Winslow free from any lien. I think that in equity, a vendee in a contract of sale who has paid the consideration, should be held to be a *purchaser* within the 37th section of the chapter of the Revised Statutes relative to the recording of deeds, &c. (1 R. S. 762.) This alone would not protect the vendee, under the 1st section of the same chapter, in case the outstanding conveyance were recorded before such vendee procured and recorded his deed, unless the taking o possession should be deemed notice to the prior grantee, and an equitable equivalent to recording.

It is unnecessary to pursue the inquiry on this point, for on the other I feel no hesitation or doubt.

The bill must be dismissed with costs.